UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-62121-CIV-SINGHAL

NIPRO CORPORATION,

    Plaintiff,

v.

SCOTT VERNER, DEAN SORRENTINO, and
JASON MONDEK,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss First Amended Complaint (DE [67]). The Motion is fully briefed and ripe for review. For the reasons discussed below, the Motion to Dismiss is denied.

### I.    INTRODUCTION

After an international arbitration Tribunal entered an award against Plaintiff, Nipro Corporation ("Nipro") and in favor of its former subsidiary Trividia Health, Inc. ("Trividia"), Nipro filed suit against three of its former executives for breach of fiduciary duty and other torts. Nipro alleges that the Defendants, who were former employees of Nipro, violated their duties to Nipro while negotiating the sale of Trividia and those breaches caused substantial damage to Nipro. Only the claims against Defendant Scott Verner ("Verner")[1] remain: breach of fiduciary duty (Count I), fraud in the factum (Count IV), constructive fraud (Count V), negligent misrepresentation (Count VI), fraudulent misrepresentation (Count VII), and unjust enrichment (Count VIII). Verner[2] moves to dismiss on the grounds

---

[1] Nipro has voluntarily dismissed Defendants Dean Sorrentino (DE [79]) and Jason Mondek (DE [77]).
[2] All three Defendants joined in the Motion to Dismiss but Verner is the only remaining Defendant.

of collateral estoppel and res judicata; he argues that the arbitration Tribunal considered and resolved Nipro's tort claims.

### A. Jurisdiction

The case was originally filed in the Circuit Court of Broward County, Florida and removed to this Court under 28 U.S.C. § 1441(a) and the Act Implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 205. Defendants contended that Nipro's claims relate to an arbitration agreement covered by the Convention. Nipro twice moved to remand the case to state court; the Court denied remand, ordered the case to arbitration, and stayed the proceedings pending arbitration. (DE [32]).

On November 22, 2022, Nipro moved to reopen the case (DE [33]) after the arbitration Tribunal ruled that it had no jurisdiction to determine the merits of Nipro's claims against these Defendants. Nipro filed a First Amended Complaint (DE [63]) in which it stated, "removal to federal court was improper and [Nipro] reserves all rights it may have to remand the action at a later date." Before embarking on the merits of the Motion to Dismiss, the Court will address subject matter jurisdiction.

Judge Cooke conducted a thorough analysis of Nipro's Motion to Remand and determined that the notice of removal adequately alleged federal question jurisdiction under Section 205 because of Defendants' arbitration demand. *See,* Order (DE [32]). But the arbitration Tribunal subsequently ruled that Nipro's claims were not subject to arbitration. (DE [33]). The question now is whether the Court can retain jurisdiction to consider Nipro's claims.

The Court is required to remand the case "if at any time before final judgment is appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The

2

Court concludes that even if jurisdiction under Section 205 no longer exists, the Court retains jurisdiction due to diversity of citizenship of the parties. 28 U.S.C. § 1332(a)(2). Nipro is a Japanese corporation headquartered in Osaka, Japan, and the three named Defendants are citizens of the State of Florida. (DE [63] ¶ 2-8). Although Defendants could not have removed the case solely on the basis of diversity jurisdiction under the forum-defendant rule, *see* 28 U.S.C. § 1441(b)(2), the diversity jurisdiction existed at the time of removal. Thus, the Court has an independent basis for jurisdiction and remand would not be appropriate.

B. <u>Factual Background</u>

The following facts are taken from the First Amended Complaint. (DE [63]). Nipro provides medical care products to the healthcare community. *Id.*, ¶ 2. Its wholly owned subsidiary, Nipro Diagnostics, Inc. ("NDI"), manufactured and sold blood glucose meters. *Id.* ¶ 3. Verner was the President, Chief Executive Officer, and Chairman of the Board of NDI. *Id.* ¶ 6. Verner is the person who first suggested that Nipro sell NDI. *Id.* ¶ 21. Thereafter, Verner solicited potential buyers and negotiated the sale on behalf of Nipro. *Id.* ¶¶ 22-54. Nipro sold NDI to a third party, Sinocare, Inc., which changed NDI's name to Trividia. *Id.* ¶ 4. Following the sale of NDI, Verner remained with the company and served as Trividia's CEO. *Id.* ¶ 107.

Nipro alleges that Verner – while still employed by NDI and ostensibly acting on behalf of Nipro -- negotiated a five-year International Distribution Agreement ("IDA") between Nipro and Trividia under which Nipro was required to purchase an annual minimum volume of medical products from Trividia after the sale. *Id.* ¶¶ 55-100. Nipro paid Verner over $4 million as a transactional bonus for completing the sale. *Id.* ¶ 105.

A dispute developed between Nipro and Trividia about Nipro's performance under the IDA. *Id.* ¶ 109. Trividia filed an arbitration claim against Nipro in which Trividia was awarded $17,477,511 in damages, plus attorneys' fees and costs. *Id.* ¶ 111.

Nipro's First Amended Complaint alleges that Verner breached his fiduciary duties to Nipro in several ways: (1) by negotiating terms that were detrimental to Nipro but served Verner's self-interest; (2) by misrepresenting the terms of the IDA to Nipro's management; (3) by collecting a bonus for his work on the deal; and (4) by suing Nipro on behalf of Trividia. The First Amended Complaint sums up Verner's alleged wrongdoing thusly:

> In short, after securing for himself and the other Fiduciaries both hefty bonuses from Nipro and lucrative executive positions at their future employer, and after assuring Nipro that he would zealously advocate its interests, Verner knowingly misrepresented to Nipro the very terms of the IDA that it deemed non-negotiable; purposely negotiated those terms so as to benefit himself and his future employer at Nipro's great expense; pressured and even bullied Nipro into closing the deal quickly; and then – after Nipro discovered the terms of the IDA were not as Verner said and disputed them – turned around and charged Nipro with breaching those terms, ultimately securing a multimillion dollar arbitration award against Nipro.

*Id.* ¶ 112.

Verner moves under Fed. R. Civ. P. 12(b)(6) to dismiss the First Amended Complaint on the ground of res judicata and collateral estoppel. Verner argues that Nipro's claims against Verner were resolved in the ICC arbitration between Nipro and Trividia.

II.   LEGAL STANDARDS

A. Failure to State a Claim

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and

4

conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### B. Collateral Estoppel

The doctrine of collateral estoppel "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" *Kordash v. United States,* 51 F.4th 1289, 1294 (11th Cir. 2022) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748–49 (2001))). Collateral estoppel applies when four conditions are met:

> (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and

>   (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (quoting *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012)).

### C. Res Judicata

"Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *S. River Watershed All., Inc. v. Dekalb Cnty., Georgia*, 69 F.4th 809, 815 (11th Cir. 2023) (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001)). In order to bar a claim due to res judicata, the party invoking it must establish four elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Id.*

### III. DISCUSSION

Verner argues that this case is an attempted "do over" of the adverse judgment entered against Nipro by the arbitration Tribunal. He contends that the defenses Nipro unsuccessfully raised in the arbitration are recycled here as tort claims and are barred by collateral estoppel and res judicata.

The threshold issue is whether the defenses of collateral estoppel and res judicata can be raised on a motion to dismiss. "Generally, the existence of an affirmative defense will not support a motion to dismiss" unless the complaint's own allegations "indicate the existence of an affirmative defense, so long as the defense clearly appears on the face

6

of the complaint." *Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir. 1984).

Verner's motion is based on the written arbitration decision, which is not attached to the First Amended Complaint. The First Amended Complaint does, however, seek damages for the judgment entered against Nipro in the arbitration. *See* (DE [63] ¶¶ 112, 126, 162, 176, 188, and 199). Verner argues that because the arbitration decision is referenced in the First Amended Complaint, the court may consider the facts and determinations set forth in the arbitrators' written decision. *See Wilchombe,* 555 F.3d at 959 (court may consider at the motion to dismiss stage "any documents referred to in the complaint which are central to the claims.")

A document is "central to the complaint" if it is necessary to establish the plaintiff's claims. *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005) ("appellant's references to the dealership contract are a necessary part of their effort to make out a claim that the relationship between U-Haul and its independent dealers is not a genuine agency, but a sham agency"); *see also, Amnay v. Select Portfolio Servicing, Inc.,* 2023 WL 3944869, at *2 (11th Cir. Jun. 12, 2023) (deed and modification agreement not attached to complaint were central to plaintiff's request for declaratory relief concerning ownership of property); *Roberts v. Carnival Corp.,* 824 Fed. Appx. 825, 826 (11th Cir. 2020) (passenger's cruise ticket contract "is not central to her claims because it is not a necessary or essential part of [her] effort to show that she was injured due to Carnival's negligence"); *Baker v. City of Madison, Ala.,* 67 F.4th 1268, 1277 (11th Cir. 2023) (body camera video referenced in complaint was "central to [plaintiff's] claims where it presented both visual and audio depictions of the events).

Nipro's First Amended Complaint alleges that Verner was appointed to negotiate the sale of NDI to Sinocare on Nipro's behalf (DE [63] ¶ 27) but engaged in deceptive self-dealing and advanced the interests of his future employer, Sinocare, to the detriment of Nipro. *Id.* ¶ 97. Nipro references the Trividia arbitration to establish that the award, and the attorneys' fees and costs it incurred in the arbitration, are part of the damages it sustained because of Verner's alleged wrongdoing. Nipro's claims in this case do not arise from the arbitration and are not based on the arbitration. Indeed, the wrongdoing alleged to have been committed by Verner took place long before the arbitration. Although there is some overlap between the facts considered in the arbitration and the wrongdoing alleged to have been committed by Verner, the arbitration proceeding is not central to Nipro's claims and the arbitration decision is not properly before the Court.

But even if were proper to consider the arbitration decision at this stage of the litigation, the Court concludes that Nipro's claims are not barred by collateral estoppel or res judicata.

"Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.,* 327 F.3d 1309, 1317 (11th Cir. 2003). The issues raised in this case and in the Trividia arbitration are not the same. The issue in the arbitration was whether Nipro was tricked into signing the IDA; the arbitrators found it was not and awarded Trividia damages for Nipro's failure to perform under the IDA. In the present case, the issue is whether Verner breached his fiduciary duties to Nipro by disregarding Nipro's instructions and by negotiating a deal that served his interests and not Nipro's. Further, in the present case Nipro seeks to recover the $4 million transaction bonus it paid to Verner. These issues are entirely separate from the issue of whether Nipro performed under the IDA.

The overlapping of facts in both cases does not establish that Nipro's claims are precluded by the Trividia arbitration. There may be *some* factual issues that Nipro is estopped from contesting, but the First Amended Complaint is not subject to dismissal on the ground of collateral estoppel.

Likewise, Nipro's claims against Verner are not barred by res judicata. For res judicata to apply, both cases must have involved the same cause of action. *S. River Watershed All., Inc.*, 69 F.4th at 815. In the Trividia arbitration, the primary cause of action was Trividia's right to damages for Nipro's failure to perform under the IDA. In the present case, the primary cause of action is Nipro's right to tort damages from Verner for his breach of fiduciary duties to Nipro. These are separate legal issues and Nipro is not barred from proceeding in this Court. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (DE [67]) is **DENIED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 21st day of December 2023.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF